Mr. Justice Hagner
delivered the opinion of the Court:
In Septembei’, 1887, James E. Young filed his bill as creditor and also as one of the heirs at law of his brother, Robert W. Young, alleging the death of the latter, intestate *245 and childless, leaving his widow, Cecelia, and four brothers and one sister, all adults, his sole heirs at law; that 'the deceased died seized of several parcels of land in this city described in the bill, and indebted to the complainant for borrowed money; that letters of administration had been committed to his widow; that his personal estate was insufficient for the payment of his debts; and that it was necessary the real estate, or a part thereof, should be sold for the payment of the claim of the complainant and of the other charges against his estate.
He charged that the widow, as he was informed, desired her dower in the real estate should be assigned and set apart to her by commissioners appointed by the court, and that the real estate remaining after the assignment of her dower and the payment of the debts was not susceptible of partition without loss and injury to those interested; and that it would be for the benefit and advantage of all concerned that it should be sold under the decree of the court and the proceeds distributed to the heirs at law.
The' bill prayed for the appointment of commissioners to assign dower to the widow; for a sale after such assignment, and the division of the residue after payment of the debts “ amongst the parties interested in the premises and concerned in the proceeds of sale.”
The widow answered that she desired 'her dower interest should be ascertained, assigned, and set apart to her by due proceedings under the direction of the court; and she and the other defendants assent generally to the prayers of the bill.
Testimony was taken in support of the bill, but none as., to the values of the several lots; and in February, 1888, a decree was passed, in substance, assigning to the widow the lot 18 in square 367, known as the “Homestead,” as and for her dower in the real estate in these proceedings mentioned, finding an indebtedness of $300 with interest due to the. complainant, and directing the sale of all of the other property by trustees for the purpose of paying the debts of the *246 intestate, and other charges and liabilities of his estate, and for division and distribution of the proceeds amongst his heirs at law, parties to this suit, clear and discharged of and from all claim of dower of. the widow therein and thereto. The trustees on the 21st of June, 1888, filed their report, stating they had sold the property, omitting the lot in which dower was assigned, for $17,434.
On the 26th of June, five days after the sale, the widow filed her petition, alleging that previous to the signing of the decree in this cause, without being representeddoy counsel, and relying upon the advice of friends, she consented to and did agree to accept the “Homestead” occupied by herself and her late husband at his death, as and for her dower in his estate; that the same was supposed to be, both by herself and other parties to .this suit, at a fair valuation, equal to one-third in value of the said real estate, and was so taken by her and was intended to be apportioned to her on that basis; that since the decree in this cause the residue of the estate has been sold and has brought a price largely in excess of the estimated values, so that the house and premises which was assigned to her by mutual agreement is now ascertained to be much less than one-third in value of her said husband’s estate; that all of the other parties to the cause, or at least .some of them, are desirous of carrying out the intention which actuated the assignment of dower as aforesaid, to wit, that she should have her full one-third value of said éstate for life. She asks as relief that the cause be referred to the Auditor to take proof to ascertain the fair value of the said premises occupied by her, and also to state what her dower would amount to in the property sold, that she might have her one-third in value of the whole estate by assignment of the said “Homestead” as part thereof, and by having the residue thereof invested and the interest and income therefrom paid to her during her life, and a prayer for general relief.
Four of the heirs at law assented to the granting of the *247 application ; but the other heir, Thomas E. Young, interposed a demurrer to the petition. The equity justice in July confirmed the sales and directed the Auditor to take proof as to the fair value of the lot so assigned to.the widow by the decree passed in February, and report -whether such value is equal to onerthird of the value of the whole real estate, taking the amount of the sales thus reported by the trustees as the basis of such estimate.
The Auditor, upon the testimony taken by him, reported the value of the dower lot as......... $5,000.00
Amount of sales of the residue by the 'trustees.. 17,434.60
Makingthe entire valuation on this basis.. 22,434.60
At this valuation,, the widow’s one-third of the entire value should be........................"..... $7,478.20
Whereas the value of lot assigned was;........... 5,000.00
Making a difference against thewidow of. ■ -2,478.20
At this valuation the widow, instead- of receiving one-third in value of her husband’s lands to hold as her dower, only received less than one-fourth in value of the estate; while the five heirs who should have been entitled, according to the estimate of the decree, only to $10,000, had received $17,479, an excess of $7,479 over their supposed share. The Auditor, under the direction of the court, stated and filed with his report alternativé' distribution accounts, whereby it appears that if the petition of the widow be granted, the said sum of $2,478.20 would be reserved from present distribution and. should be set apart for additional dower to the widow, the interest or income therefrom to be enjoyed by her during her life and the corpus turned over to the heirs at law at her death.
The Equity Court sustained the demurrer interposed by Thomas E. Young, and dismissed the petition; and the appeal is taken from this order.
*248 In behalf of the demurrant it is insisted (1), That the widow is entitled to no relief at all in the premises, as she with full means of knowledge, agreed to receive lot 18, in square 867, in full of her claim of dower in her husband’s estate, and that its undervaluation was a mere error of judgment on her part; and (2), That if .she have any claim to relief it should have been sought by bill of review to set aside the decree of February, 1888, and cannot be obtained by petition.
Thé entire controversy between the widow and four of the heirs on the one side, and the remaining heir on the other, is presented by her petition and the demurrer. The .facts thus charged and admitted assert substantially that the widow only consented to receive lot 18 upon the belief upon the part of herself and all the heirs that she would thereby receive a full one-third in value of her husband’s realty, to hold for her life; and that the residue of the realty would not exceed twice in value of her dower land, and that it was upon these terms only the agreement was entered into; and these averments are also admitted by the answers of the other heirs. It cannot be supposed the widow would have sanctioned the proposed agreement if she had ascertained before it was ratified by the court’s decree, that the first supposition was so grossly wrong. It appears she made the agreement without the aid of counsel, confiding in the advice of friends; and that about three months after the decree, and very soon after the report of the trustees, she filed her application.
Nor can it be questioned that it would be most inequitable to allow the demurrant to profit by such a mutual misunderstanding, to which he contributed quite as much as his sister-in-law, even if the claimant were an ordinary contractor, dealing a’bout the affairs of a stranger.
But we cannot lose sight of the consideration that the petitioner is the widow of the man whose real estate is the subject of this contention, and that as such she occupies a *249 position especially favored at law, as well as in courts of equity; that life, liberty, and dower are classed together by the great authorities as the cherished objects of the law, and that a large part of the Great Charter of liberties was especially devoted to the security of this right. Besides the positive declaration that the widow’s dower should always be secured to her free from all costs and charges, it provided in numerous particulars securities for its enjoyment. Every provision of the Great Charter, 9 Henry III, Ch. 7, referring to this subject was adopted in Maryland as part of its law, and devolved upon this jurisdiction. The widow is recognized as a purchaser for a fair consideration (1798, Ch. 101, Subeh. 13, Sec. 5), an attitude as consonant wdth justice as with law ; and as a favored creditor. Gibson vs. McCormick, 10 G. & J., 67. • She has a moral right to be provided for and have a maintenance and sustenance out of her husband’s estate. And upon this moral law the law of England is founded as to the right of dower. 1 Story Eq., Sec. 629. And part of the husband’s obligation is to provide for his widow after his death.
The present application is in accordance with the course of the common law in cases where there has been an improper or erroneous assignment of dower. The assignment in this instance was not according to either of the five common law methods pointed out in the books. But dower may also be assigned by arrangement between the widow and heirs, and such assignment may be by parol. Marshall vs. McPherson, 8 Gill & J., 333. Such assignments are technically said to’ be “ against common right.”
The court of equity having undoubted concurrent jurisdiction of the general subject, had the full right to confirm the agreement made in this instance, as it did in the decree; and to exercise its jurisdiction over the subject generally in sympathy with the course of the common law in dealing with dower. 4 Kent’s Com., 72.
At. law the right of the heir to have a re-admeasurement *250 of dower, where the assignment had been excessive, was well recognized; and 13 Edw. 1, Ch. 7, West., 2d, provided that a writ of admeasurement of dower might be granted to a guardian to abate such excessive assignment, and that the heir, when he came of age, should not be bound by the action of the guardian if he had “feignedly and by collusion” failed in such suit, but that the heir still “may ad-measure the dower as it ought to be admeasured by the law of England.”
And on the other hand it is equally well settled that if the dowress be evicted of part of her dower land, after assignment she may be endowed anew out of other lands of her husband.’ Where dower was assigned the widow by the heir, or by the sheriff, on a recovery against the heir there is an implied warranty, and if the tenant in dower is impleaded by one having a paramount -title, she may vouch «and recover against the heir a third part or the two remaining parts of the land of which she is dowable. Park on Dower, 275; Mantz vs. Buchanan, 1 Md. Ch. Dec., 206. No reason can be given why a re-admeasurement should not also be had where the widow has been evicted of part only of a parcel of land assigned as her dower, and without, complete eviction its value has been greatly reduced. We should expect a more liberal application'of these just principles in courts of equity than at law, as equity can mould its remedies to abate injuries that might result from technical rules at common law.
This lady has been .denied her unquestioned right, and it is our duty to see that she receives it, if we can.
Can the relief be granted on the present application?
We do not regard the decree as final, except as to the authority to sell the supposed two-thirds free of the widow’s dower. The entire proceeds of sale are here for distribution.
It is not sought by the petition to change or set aside the decree. The application is rather in the nature-of a bill to *251 carry a decree into execution where on circumstances it may consider the former directions and vary them in case of a mistake. MitfOrd’s Equity PL, 96. This was the course adopted in Mantz vs. Buchanan, 1 Md. Ch, Sec. 206, on a petition filed in the High Court of Chancery at Annapolis to allow the widow an equivalent of the proceeds then in that court from the sale of the husband’s remaining lands for the loss of part of her dower land, which had previously been assigned her in the circuit court for Washington County. See, also, Thomas vs. Wood, 1 Md. Ch. Dec., 299.
Why put the widow to the. expense of a bill of review ,to accomplish this end against the spirit of Magna Charta, which declares that “the widow shall give nothing for her dower? ”
The loss to the demurrant will be insignificant; only the loss of the interest on about $500. during the life of the widow of his brother, from whom alone he has any claim.
The decree sustaining the demurrer is reversed and the cause remanded.